Good morning, Honors. Did I pronounce that? Yeah, that's correct. Is that okay? Okay, good. Please proceed. You've got ten minutes. May I please the court? My name is Ji Xianli and I represent the petitioner. In this case, the BIA found the petitioner not to be credible. In support of his adverse credibility determination, the BIA provided three reasons. Out of these three reasons, only one has something to do with the substance of the petitioner's actual asylum claim. That is, according to the BIA, the petitioner provided insufficient details regarding his religious beliefs. I think the record is clear. The record shows that the petitioner provided a detailed description as to how he was baptized on direct when he was asked to do so, and he answered every single question asked of him by the IJ in an effort to evaluate his level of knowledge on Christianity. Even the IJ, the record doesn't show that the IJ has any dissatisfaction with petitioner in that regard. And the BIA's finding of a lack of details regarding petitioner's religious beliefs simply just came from the fact that it's not supported at all by the record. As a matter of fact, it's contradicted by the record. As to the other remaining two reasons identified by the BIA in support of its adverse credibility determination, one relates to where petitioner lived while in the United States. It's our position that where petitioner lives in the United States has no relevancy to his actual asylum claim. And of course, under the REAL ID Act, the BIA or the immigrant judge may consider any relevant factors, but it's our position that where petitioner resides in this case has no bearings at all on the merits of a petitioner's asylum claim. If I could ask you a question, please. Certainly where a person lives doesn't have a bearing on their validity of a claim in itself, but I false advice about where he lived. He said he lived someplace he didn't live, maybe even twice, in an attempt perhaps to get a different form, a different place of litigation than otherwise. And if he gave false information about where he lived, why could that not be one factor to be considered in a credibility determination? Oh yes, of course it can be one factor, one of the factors, but if we take out, since as I just pointed out that lack of detail, that's, it has to be the BIA clearly made a mistake on that issue. So that's the only factor. So now the issue before the court is whether that only factor is sufficient to support an adverse credibility determination. And I think the challenge for your argument is that I think we probably have some precedent suggesting if multiple reasons are given for a negative determination and one of them is valid, that may be substantial evidence to support it. Yes, I agree with you, Your Honor, as a general principle. But in this case, this one factor, it has to consider the totality of the circumstances. In this case, there's other overwhelming evidence supporting petitioner's assignment claim. That's the only one factor. If there's a major inconsistencies in petitioner's presentation as to his assignment claim, I might agree that this one factor would be sufficient. But in this case, since under the real ID, the immigrant judge has to consider the totality of the circumstances. In this case, there's other overwhelming evidence supporting petitioner's credibility. And the BIA simply ignored the petitioner's consistent testimony regarding to what happened to him in China and regarding what will happen to him in China. And also, the BIA simply ignored the overwhelming cooperating evidence in this case admitted in the record, documented evidence admitted in the record in support of his assignment claim. Okay, could I ask you one final question? Yes, sir. And I may have this not totally correct because it wasn't a Latin maxim, but I wondered if you were, if you had seen a recent opinion of our court written by Judge Bea. I think it's in a case called Enying Li, in which it adopts a rule using a maxim in Latin that I think is translated as false in one, false in all. And it holds that if someone gave a on one claim in their immigration proceeding, that could be used to discredit them on other claims. I think it's a split, you know, a split panel decision. It's not unanimous. But are you aware of that case? I'm not, Your Honor, but I'm not. If not, why don't I just say you can, if the panel feels it in order, call it for any supplemental briefing. You can certainly comment on it, too. Yes, but as I said, it has to be considered on the circumstances where the first court was made. In this case, Your Honor, the petitioner came from a foreign country. He doesn't speak English. Of course he would rely on whatever advice given to him by his so-called attorney, that's an immigration consultant. And actually, the record shows that petitioner has a tendency to be honest whenever he was asked. He was the one who came up with why he getting his case moved to Tucson and then later to Las Vegas. And he was the one who came up with the fact that he was advised by his so-called attorney to move to other states so that his case can get a more easier judge. I think that he was the one. It's not that the government impugned his credibility with adverse information in his case. He actually came forward with the information himself. Okay, thank you. Thank you, Your Honor. I would like to reserve some time. And now for the government, we have Mr. Goldman. Yes, Your Honor. Thank you. Good morning. May it please the court, Dan Goldman on behalf of the Attorney General. This court should uphold the agency decision and deny the petition for review. The agency properly found Mr. Jin not credible based on the lies that he perpetrated to the tribunal. And I would It was multiple lies. It was not simply in testifying when he got to the immigration court in Las Vegas. It was in written submissions, first to the Los Angeles Immigration Court, second to the Tucson Immigration Court, and then to the Las Vegas Immigration Court. He repeatedly perpetrated a fraud upon the tribunal. He submitted a fraudulent document. He asked a pastor to lie for him and submitted that document to the court. And under the Real ID Act standard, the government would suggest to this court respectfully that it is a relevant factor in the totality of the circumstances in evaluating someone's credibility when someone is lying to the tribunal on multiple occasions, is forum shopping in an effort to try and get a better result in his case, which he admitted on the record several times. That is a relevant factor. And on that basis, we'd ask the court to uphold the agency decision. Okay, thank you, counsel. Let me ask, are you familiar with this opinion I mentioned? And I think maybe that was a pre-Real ID Act. It was, Your Honor. Which is what motivated the dissent. But if that maximum was followed in that case, how does it bear on this case? I think it supports the agency decision in this case, Your Honor. In that case, you had essentially two separate claims. One was a religion claim. One was a family planning claim for an immigrant from China. And what this court found was that one of those claims was credible. One of them was not. Actually, it didn't reach one of the claims at all, right? Yes, Your Honor. But what it found was that the non-credible claim washed over and wiped out what could otherwise have been a credible claim. So applying that maximum to this case, the fact that Mr. Jin may have told a consistent story with regard to the specific claim that he made as to what allegedly happened in China can be overcome by the multiple lies and the fraud that he perpetrated on multiple tribunals. Is there any falsehood in his testimony, and you may have touched on this, I'm not sure that I followed it, other than incorrect statement about where he resided. Is there anything else that he said that the government thinks was false? Specifically with regard to his claim, the religious persecution claim, no. The immigration judge, the board, do not rely on, don't cite any specific inconsistencies as to what he alleges happened to him in China. A little bit different when we're talking about the letter that he submits from the pastor in Las Vegas, that does bear on his claim because he's essentially trying to bolster his religious bona fides. Because what he's saying is, look, here's what happened to me in China, based on my faith, based on my Christianity. When I came to the United States, I continued to practice that faith, which also would contribute to any fear of return. So it is not completely divorced from the underlying claim. So that is an inconsistency. And as the letter from the pastor says he's been attending this church in Las Vegas for two years, he comes into court and says no, maybe a couple months. So there is a specific inconsistency related to religion. Let's take the letter from the pastor out of the case hypothetically. If you only had the falsehood about place of Is there any opinion in other circuits that addresses that issue specifically? I know that we have our Shrestha decision, which of course I'm familiar with, that indicated we take a totality of circumstances approach and a lot of the traditional devices used by courts for credibility determination come to any case in the country you're aware of that's focused on this residency issue? I don't believe so, your honor. The other response there is, I think there's a concern perhaps that twofold. One, that the venue, the residence, is completely irrelevant to the substance of the case. That's not accurate and we know that's not accurate because Mr. Jin told the immigration court it wasn't accurate. He specifically tried to get into a better forum and he said it three different times in the record. He was trying to get a more favorable decision. That's why he perpetrated this fraud upon three different immigration courts to try and get to where he thought he had better odds of succeeding in the immigration court in Las Vegas. So he's telling the tribunals this is relevant because he then in Las Vegas. And it is also, if the court has concern that immigrants are going to be cross-examined about things that are completely irrelevant, they're not going to be cross-examined about what they had for breakfast. What did you have? I had pancakes. Aha, here's the receipt from Denny's. No, you had eggs. You're not credible. You lose your asylum case. That's not what we're talking about here. We're talking about someone who affirmatively misrepresents information to three different tribunals. And I would respectfully disagree with opposing counsel. He tried to paint this as maybe Mr. Jin got bad advice or was told by someone to do this. That is part of the story and that's part perhaps of how this case got originally from the Los Angeles immigration court to Tucson. But when this case gets from the Tucson immigration court to Las Vegas, he goes to his new counsel and says, I now live in Las Vegas. Here's paperwork. We need to do a change of venue motion. And the immigration judge does a very thorough job of saying, I don't believe counsel, Mr. Simonson, the new counsel who came in in Tucson, had any part of this. He was simply doing what his client, Mr. Jin, or reacting to what his client told him. Let me give you another hypothetical just because this is a fairly novel case in some respects. So let's assume someone had an absolutely perfect claim for, they had a very strong claim for asylum, like a, you know, a busload of religious leaders and cultural icons observed them being persecuted in their foreign country. But they came to the U.S. and then gave false information in a form shopping attempt. Would we say they don't get asylum as a consequence of the form shopping? I think, Your Honor, it would have to depend on the facts of the case. And in every case has to be judged individually. I think the fact here that, as the immigration judge noted, Mr. Jin became evasive, combative, non-responsive when he started to get questions about where he lived. That also contributed to the immigration judge's evaluation of this case. And this court and others have recognized that a witness's demeanor is a relevant factor. Looking at the record, there are multiple instances on the record where Mr. Jin is asked a question, sometimes is told specifically, this is a yes or no question. And the next word out of Mr. Jin's mouth is not yes or no. He is giving evasive, non-responsive, and at some level combative answers. So that does play in here. To get back to the specifics of your case, Your Honor, or your hypothetical, it's hard to answer that without seeing the specifics. I think you've answered it fairly enough. Thank you, Your Honor. Unless one of the other judges has questions for you. Thank you, Your Honor. Thank you. Okay. We thank the respondent for the argument and Mr. Jisheng Li. I just want to point out two things, Your Honor. First of all, I don't think that there's any inconsistency or falsehood in the pastor's letter. The pastor never said that the petitioner has been attending the church service in Las Vegas since July 2007. He only says that there has been a member of that church. The record shows that petitioner and also that church was affiliated with the Korean Evangelical Church of America. And the record shows that petitioner was attending Los Angeles branch of that same church in Los Angeles. So theoretically, he can be considered to be a member of that church since July 2007, even though he was attending most of the time another branch in Los Angeles. And the second thing is, Your Honor, I would say the demeanor. I do agree that demeanor is a relevant factor. But under the real ID, I think that the demeanor has to go to the demeanor. The underlying issue that has been rising to the immigration judge's demeanor observation has to go to the heart of the applicant's claim. If we read the real ID closely, word by word, and the real ID only identified three factors that doesn't have to go to the heart of the applicant's claim. It's inconsistency, inaccuracy, or falsehood that doesn't have to go to the heart of the applicant's claim. So for the demeanor, it's our position that the demeanor observation has to go to the heart of the applicant's claim. In this case, the demeanor only relates to where respondents reside. So it doesn't go to the heart of his claim. Therefore, I would argue in this case, the demeanor observation by the immigration judge should be given very limited weight in the court's legal analysis. So all in all, Your Honor, I think that only one factor would not support the adverse credibility determination. So the case should be remanded to the BIA for determination whether or not the petitioner suffered past persecution, assuming that he is credible. Thank you, Your Honor. Thank you very much. We thank counsel on both sides for excellent arguments, and the case of Ginby Holder shall be submitted.
judges: Fisher, Gould, Christen